UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **MCKESSON CORPORATION** <br> One Post Street <br> San Francisco, CA 94104-5296 | : <br> : <br> : <br> : | **Case No.:** 3:19-cv-164 |
| **Plaintiff,** <br> vs. | : <br> : <br> : <br> : | **Judge:** _____ |
| **DIANA DILLOW** <br> 11229 County Road <br> New Paris, Ohio 45347 | : <br> : <br> : <br> : | **COMPLAINT** |
| and | : | |
| **BRANNON LAW FIRM, LLC** <br> c/o Douglas D. Brannon <br> 1525 Ashbury Woods Dr. <br> Dayton, Ohio 45458 | : <br> : <br> : <br> : | |
| and | : | |
| **DOUGLAS D. BRANNON, ESQ.** <br> The Brannon Law Firm <br> 130 West Second Street, Suite 900 <br> Dayton, Ohio 45402-1590 | : <br> : <br> : <br> : | |
| **Defendants.** | : <br> : <br> : | |

## PARTIES

1.      Plaintiff McKesson Corporation ("McKesson") is the fiduciary (sponsor) for the McKesson Corporation Health Plan ("the Plan"). The Plan is an ERISA-qualified, self-funded health benefit plan that is provided to employees of McKesson Corporation. All benefits under the Plan are paid from the assets of McKesson or employees thereof. None of the benefits under

1

the Plan are paid through an insurance policy. The general administration of the Plan is provided by Aetna US Healthcare ("Aetna").

2. Defendant Diana Dillow ("Dillow") is a resident of the State of Ohio, and resides in Preble County, Ohio at 11229 County Road, New Paris, Ohio 45347. Dillow's spouse was an employee of McKesson Corporation, and as such, was a Member and Participant in the Plan. Dillow was an eligible Dependent under the Plan.

3. Defendant the Brannon Law Firm, LLC, a/k/a Brannon & Associates (the "Brannon Firm"), is a limited liability corporation with its principal place of business in Dayton, Montgomery County, Ohio. The Brannon Firm represented Dillow in pre-litigation settlement of a personal injury claim.

4. Douglas D. Brannon ("Brannon") is an attorney (Ohio Sup. Ct. Registration No. 76603) associated with the Brannon Firm and who represented Dillow in pre-litigation settlement of the personal injury claim referenced above. Brannon is employed in Montgomery County, Ohio, at the Brannon Firm, located at 130 West Second Street, Suite 900, Dayton, Ohio 45402.

## JURISDICTION

5. This Court has original and exclusive jurisdiction over Plaintiff's claim for a violation of ERISA and enforcement of the terms of an ERISA plan under §502(a)(3) (29 U.S.C. §1132(a)(3)); §502(e)(1) (29 U.S.C. §1132(e)(1)) and 28 U.S.C. §1331.

6. Dillow, the Brannon Firm, and Brannon, reside or conduct business in Preble County and/or Montgomery County, Ohio, and the wrongful conduct took place in Preble County and/or Montgomery County, Ohio.

## FACTUAL BACKGROUND

7. Dillow sustained personal injuries as a result of automobile accident on April 6, 2017 ("the accident"). Dillow sought treatment for her injuries.

8. At all times relevant, Dillow was an eligible Dependent under the Plan, and the Plan remitted payment to medical providers for the medical treatment rendered to Dillow as direct and proximate result of the accident.

9. The sum paid by the Plan to medical providers as a result of the injuries sustained by Dillow as a direct and proximate result of the accident is $2,095,879.34. A redacted itemization of the claims paid by the Plan is attached as Exhibit 1.

10. Dillow retained the Brannon Firm and its attorney Brannon to represent her with regard to her personal injury claim.

11. During pre-suit negotiations, the Brannon Firm and Brannon held themselves out to be the legal representatives for Dillow.

12. In or around October 2018, Dillow settled her personal injury claim without filing a lawsuit, and the tortfeasor's carrier issued a settlement check in the amount of $5,955,682.79. The Brannon Firm and Brannon represented Dillow's interests in this pre-litigation settlement.

13. Pursuant to the terms of the Plan, the Plan has a lien against the proceeds of any recovery by Dillow in the amount of the benefits paid, and has the right to seek reimbursement of expenses paid on behalf of Dillow. A true and correct copy of the relevant portions of the master plan document and summary plan description are attached as Exhibits 2 and 3, respectively. The entire master plan document and summary plan description are not attached due to length, but the summary plan description was provided to Brannon on November 1, 2018, and both documents will be provided to Dillow, the Brannon Firm, and Brannon upon request.

14. Under the terms of the Plan, Dillow was required to refund to the Plan all benefits paid if Dillow recovered from a third party, including proceeds from a settlement. The Plan's right to recover is not limited by the application of any statutory or common law "make whole" doctrine. Ex. 2, Section 18.5, p. 175-77; Ex. 3, pp. 54-55.

15. Upon receipt of settlement funds, the Brannon Firm and Brannon ("Brannon Defendants") refused to refund to the Plan the benefits that the Plan paid on Dillow's behalf.

16. On or about August 1, 2017, The Rawlings Company, LLC ("Rawlings")[1] sent correspondence to Brannon, as counsel for Dillow, providing notice of the Plan's lien and advising Brannon that the Plan is an ERISA-qualified, self-funded plan.

17. On or about October 26, 2018, Dillow through her attorney Brannon, contacted Rawlings Company to discuss potential resolution of the Plan's lien.

18. On or about October 29, 2018, Rawlings was informed that Dillow had resolved her claim with the tortfeasor's insurance carrier for $5,955,682.79.

19. Upon information and belief, the tortfeasor's insurance carrier issued a check to Dillow, the Brannon Firm, and/or Brannon in the amount of $5,955,682.79.

20. From November 1, 2018, through the filing of this action, Rawlings and/or the Plan's representatives have been in contact with Brannon in an attempt to resolve the Plan's lien.

21. Upon information and belief, at least $2,095,879.34 (the amount of the Plan's lien) can be clearly traced to funds in Defendants' possession.

22. On January 15, 2019, the Plan's counsel spoke with Brannon in an attempt to resolve the Plan's lien without litigation.

---

[1] The Rawlings Company, LLC is an authorized subrogation vendor for Aetna Life Insurance Company, the Claims Administrator. Therefore, all actions taken by employees of The Rawlings Company, LLC are on behalf of Aetna and the Plaintiff as fiduciary for the Plan.

23.     On February 11, 2019, the Plan's counsel had further communication with Brannon in an attempt to resolve the Plan's lien without litigation.

24.     On February 13, 2019, Brannon offered to resolve the Plan's $2,095,879.34 lien for $525,000.00.

25.     To date, the parties have been unable to resolve the Plan's lien.

## EMPLOYEE RETIREMENT INCOME SECURITY ACT (ERISA)

26.     ERISA defines an employee welfare benefit plan as any plan, fund, or program established or maintained by an employer for the purpose of providing for its participants or their beneficiaries medical, surgical, or hospital care or benefits.

27.     ERISA §502(a)(3), codified at 29 U.S.C.S. § 1132(a)(3), authorizes a civil action by a participant, beneficiary, or fiduciary (1) to enjoin any act or practice which violates the terms of the plan, or (2) to obtain other appropriate equitable relief to redress such violations or to enforce any provisions of the terms of the plan.  See, e.g., *Longaberger Co. v. Kolt*, 586 F.3d 459 (6th Cir. 2009); *US Airways, Inc. v. McCutchen*, 133 S.Ct. 1537 (2013).

## FIRST CAUSE OF ACTION
## ENFORCEMENT OF ERISA

28.     Paragraphs 1 through 27 are hereby incorporated as if fully set forth herein.

29.     By failing to acknowledge and honor the Plan's reimbursement rights, Defendants have violated the Federal ERISA statute. Thus, pursuant to the ERISA provision codified at 29 U.S.C.S. § 1132(a)(3), Plaintiff seeks equitable relief against Defendants to enforce the recovery rights as set forth in the aforementioned ERISA statute and in the Plan.

## SECOND CAUSE OF ACTION
## RIGHT OF REIMBURSEMENT

30.     Paragraphs 1 through 29 are hereby incorporated as if fully set forth herein.

31. As set forth in the Plan: "Certain benefit payments are subject to the Plan's primary right of recovery. This includes, but is not limited to, benefit payments related to first party coverage such as medical payment benefits, person injury protection, and underinsured motorist/uninsured motorist coverage." Ex. 2, p. 175. Additionally, as a condition of receiving benefits under the Plan, "the Participant grants specific and first rights of subrogation, reimbursement, and restitution to the Plan" and "[s]uch rights shall come first" and "are not adversely impacted in any way by [w]hether the covered person recovers full damages for their losses" or has been "made whole." *Id*. At the time the Plan pays benefits, the Participant "grants to the Plan (as a condition of such payment) a lien (including, but not limited to, an equitable lien by contract in any property)." *Id*. Pursuant to the Plan, until the lien is completely satisfied, "the holder of any such property (whether the Participant, the Participant's attorney, an account or trust set up for the Participant's benefit, an insurer, or any other holder) shall hold such property as the Plan's constructive trustee." *Id*.

32. The "Rights of Recovery" section of the Summary Plan Description similarly states that the Plan has a right to subrogation, reimbursement, and restitution, which is not limited by whether the covered person recovers full damages for his/her loses or has been made whole. Ex. 3, p. 52-53. "When the plan pays benefits under this provision, the covered person automatically grants to the plan (as a condition of the payment) a lien to any property (including money) that is directly or indirectly related to benefits paid under this provision regardless of the type of property or the source of the recovery… ." *Id*. at 52.

33. As set forth above, the right of reimbursement is guaranteed to the Plan by the express language of the master plan document and the Summary Plan Description. Therefore, an Order must be issued directing Defendants to pay or turn over such proceeds to the Plan to the

extent of the Plan's interest therein, and directing Defendants to execute any documents or instruments necessary to transfer a legal title of such converted property to Plaintiff.

### THIRD CAUSE OF ACTION
### ACCOUNTING

34. Paragraphs 1 through 33 are hereby incorporated as if fully set forth herein.

35. Pursuant to the provisions of ERISA, Plaintiff has a fiduciary obligation to account for and protect the assets of the Plan for the general welfare of all Plan participants.

36. Upon information and belief, Defendants are in possession of money to which the Plan is entitled to recover as reimbursement under the terms of the Plan.

37. As such, and in order to appropriately protect the assets of the Plan, an Order must be issued directing Defendants to pay or turn over such proceeds to the Plan to the extent of the Plan's interest therein, and directing Defendants to execute any documents or instruments necessary to transfer a legal title of such converted property to Plaintiff.

### FOURTH CAUSE OF ACTION
### EQUITBALE LIEN OR CONSTRUCTIVE TRUST

38. Paragraphs 1 through 37 are hereby incorporated as if fully set forth herein.

39. The Plan specifically identifies particular funds from which the Plan may recover and specifies the portion of that fund to which the Plan is entitled.

40. Due to the injuries sustained by Dillow as a result of the accident, the Plan provided medical benefits on Dillow's behalf in the amount of $2,095,879.34.

41. Upon information and belief, the funds to which the Plan is entitled are in the possession of Defendants. Defendants' refusal to reimburse the Plan, with constructive and actual knowledge of the Plan's subrogation and reimbursement rights, constitutes bad faith and willful misconduct.

42. Defendants have knowingly interfered with the Plan's reimbursement and subrogation rights by diverting monies due to the Plan to themselves and enabling Dillow to avoid the Plan's subrogation and reimbursement provisions.

43. In accordance with *Harris Trust and Savings Bank v Salomon Smith Barney, Inc.*, 530 U.S. 238 (2000) and its progeny, including *Sereboff v. Mid Atlantic Medical Services, Inc.,* 647 U.S. 356 (2006), *Longaberger v Kolt*, 586 F.3d 459 (6th Cir. 2009) and *US Airways, Inc. v. McCutchen*, 133 S.Ct. 1537 (2013), the Plan is authorized to seek reimbursement of funds which belong to the Plan from Defendants.

44. There is a risk that Defendants will dissipate and/or dispose of the sums to which the Plan is entitled.

45. The Plan is therefore entitled to have an equitable lien or constructive trust imposed on funds belonging to the Plan in Defendants' possession in the amount of $2,095,879.34.

## FIFTH CAUSE OF ACTION
## UNJUST ENRICHMENT UNDER 29 U.S.C. §1132(a)(3)

46. Paragraphs 1 through 45 are hereby incorporated as if fully set forth herein.

47. The Plan paid medical expenses on behalf of Dillow, and Dillow accepted those benefits provided by the Plan.

48. Defendants are not entitled to retain the proceeds of the settlement without reimbursing the Plan for the amount of medical benefits provided to Dillow.

49. Defendants have no lawful claim to the settlement funds to the extent of the amount the Plan paid to medical providers for the benefit of Dillow.

50. Despite due demand, Defendants have failed to reimburse the Plan for the amount of medical benefits paid on Dillow's behalf, an act that violates established principles of fairness and equity.

51. By reason of the medical benefits provided to Dillow and Defendants' failure to reimburse the Plan, Defendants have been unjustly enriched to the detriment of the Plan in the amount of $2,095,879.34.

52. The Plan is entitled to recover the amount of the medical benefits it has provided on Dillow's behalf in the amount of $2,095,879.34.

### SIXTH CAUSE OF ACTION
### FOR ATTORNEYS' FEES UNDER 29 U.S.C. §1132(g)(1)

53. Paragraphs 1 through 53 are hereby incorporated as if fully set forth herein.

54. As previously stated, this action seeks to benefit all participants and beneficiaries of the Plan by obtaining the return of Plan assets. Upon a finding that Defendants are culpable and liable to the Plan for the sum sought, an award of attorneys' fees will deter other persons from engaging in such conduct under similar circumstances.

55. Accordingly, under 29 U.S.C. §1132(g)(1), Defendants are liable to the Plan for reasonable attorneys' fees and costs of this action in order to obtain the return of Plan assets.

WHEREFORE, as a result of the violation of ERISA by Defendants, the Plan and all Plan participants have been harmed, and Plaintiff seeks appropriate equitable relief, pursuant to ERISA §502(a)(3), 29 U.S.C. §1132(a)(3) and (g)(1) and hereby requests the following relief:

a. Judgment in favor of Plaintiff;

b. An accounting of the settlement funds;

c. A constructive trust and equitable lien in favor of the Plan upon the settlement funds that are in possession of Defendants;

d. A declaration of the Plan's ownership of the settlement proceeds up to the amount of payments made by the Plan for medical expenses ($2,095,879.34);

e. An order directing Defendants to pay or turn over such proceeds to the Plan to the extent of the Plan's interest therein, and directing Defendants to execute any documents or instruments necessary to transfer a legal title of such converted property to the Plan;

f. An order directing Defendants to pay the reasonable attorneys' fees and costs of this action; and

g. Any other further relief to which Plaintiff is entitled.

Respectfully submitted,

*/s/ Alyson Terrell*
Alyson Terrell         (0082271)
ULMER & BERNE LLP
65 East State Street, Suite 1100
Columbus, Ohio  43215-4213
Telephone:   614-229-0042
Facsimile:   614-229-0043
aterrell@ulmer.com

and

Jennifer Hageman         (0066632)
ULMER & BERNE LLP
600 Vine Street, Suite 2800
Cincinnati, Ohio 45202
Telephone: (513) 698-5022
Facsimile: (513) 698-5023
jhageman@ulmer.com

*Attorneys for Plaintiff*

COL1997 267813v1
38037.00111